UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

BERNARD PEREZ,

                    Petitioner,                    09 Civ. 5173

        -against-                                  OPINION

JAMES CONWAY, Superintendent,

                    Respondent.

----------------------------------------X

A P P E A R A N C E S :

        Pro Se

        BERNARD PEREZ
        #04-A-4046
        Attica Correctional Facility
        P.O. Box 149
        Attica, New York 14011-0149

        Attorneys for Respondent

        CYRUS R. VANCE, JR.
        District Attorney
        New York County
        One Hogan Place
        New York, NY  10013
        By:  Gina Mignola, Esq.

DOC #:
DATE FILED: 3|18|11

**Sweet, D.J.**

Petitioner Bernard Perez ("Perez" or the "Petitioner") filed this action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus.  Upon the facts and conclusions set forth below, the petition is denied.

## Prior Proceedings

The petition was filed on June 3, 2009 by Perez alleging that his attorney in the state proceeding in which he was convicted of murder and certain lesser charges was ineffective, that he was improperly denied a continuance at a suppression hearing and a severance, that evidence was admitted improperly, and that his sentence of life without parole was excessive.

The petition was opposed on March 29, 2010 and on April 14, 2010 Perez was granted sixty days to reply.  No reply has been submitted.

**The State Court Proceedings**

By a judgment of the Supreme Court, New York County
(Edwin Torres, J.), entered on July 13, 2004, Perez was
convicted after a jury trial of one count of first-degree murder
(NY Penal Law § 125.27(1)(a)(vii)(b)), two counts of second-
degree murder (NY Penal Law §§ 15.25(1) and (3) - intentional
and felony murder), and two counts of first-degree robbery (NY
Penal Law §§ 160.15(1) and (3) - serious physical injury and
dangerous instrument), all arising out of the murder of Doris
Drakeford.  In connection with Jerry Pollard's murder, Perez was
convicted of two counts of second-degree murder (NY Penal Law §§
125.25(1) and (3) - intentional and felony murder), two counts
of first-degree robbery (NY Penal Law §§ 160.15(1) and (3) -
serious physical injury and dangerous instrument), and two
counts of first-degree burglary (NY Penal Law §§ 140.30(2) and
(3) - physical injury and dangerous instrument).

On May 11, 2004, the jury found Perez guilty on all of
the charges presented to it.  On July 13, 2004, he appeared for
sentencing.  At Perez's request, his counsel spoke only to note
that Perez wished to receive a sentence less than life in prison
without the possibility of parole.

For his crimes against Drakeford, Perez was sentenced as a second violent felony offender to a lifetime term of imprisonment without the possibility of parole for the first-degree murder charge and to lesser concurrent prison terms for the other charges.  For his crimes against Pollard, Perez was sentenced to terms of from 25 years to life in prison on the murder counts and to lesser concurrent terms on the other charges, to run consecutively to the sentences for the Drakeford killing.  Perez is serving this sentence.

On direct appeal to the Appellate Division, First Department, Perez was represented by new counsel, who filed a five-point brief on his behalf.  Perez claimed: (1) that he had received ineffective assistance of counsel from his trial attorney; (2) that the judge should have granted him a continuance during the suppression hearing; (3) that the judge should have severed the trial of the Drakeford charges from those related to Pollard's murder; (4) that the judge should not have admitted evidence of the report Fernando Castro made about what he had seen in Pollard's apartment; and, (5) that the sentence imposed was excessive and should be reduced.

On January 3, 2008, the Appellate Division unanimously affirmed the convictions.  People v. Perez, 47 A.D.3d 409 (1st

3

Dep't. 2008).  As to the ineffective counsel claim, the court
held that "[t]hese claims [were] unreviewable on direct appeal
because they involve[d] matters outside the record concerning
counsel's strategic choices." Id. at 410.  The court noted
that, while Perez's trial attorney had died by the time the
appeal was heard, there had been a period of over two years
between the sentencing and his death, and Perez had been
represented by his new counsel during most of that time.  Id.
Thus, there was no valid reason for Perez not to avail himself
of his "ample opportunity" to file a post-judgment motion so
that a full record could have been made.  Id.  In the
alternative, they found that, "[o]n the existing record, to the
extent it permits review," there was no merit to the claim that
Perez had been denied effective assistance of counsel under the
relevant state and federal standards.  Id.


        The court also rejected Perez's other claims.  It
found that the judge had allowed the defense to introduce
extensive evidence about Perez's alleged mental illness in
support of the claim that his confessions were involuntary, and
that the judge did not abuse his discretion in refusing to grant
a continuance for the purpose of introducing still further
evidence on that point.  Id. at 410.  Moreover, the court found
that Perez had failed to preserve any constitutional claim in

4

this regard and declined to review that belated claim in the
interests of justice.  Id.


Also, the court found that the judge had properly
denied Perez's motion to sever the counts related to one murder
from the counts related to the other.  Id. at 410-11.  As to the
state-law hearsay argument, the court found that the evidence
was properly admitted for a legitimate, non-hearsay purpose.
Id. at 411.  Noting that Perez had challenged the limited
testimony about Castro's report to the police solely on state
law grounds, the court declined to reach any constitutional
argument in that regard.  Id.  Finally, the court found "no
basis for reducing the sentence" Justice Torres had imposed.
Id.


Perez next sought leave to appeal, pointing to four
out of five of his appellate issues as grounds for further
review.  On April 30, 2008, Chief Judge Judith Kaye denied leave
to appeal.  People v. Perez, 10 N.Y.3d 843 (2008).


**The Claim of Ineffective Counsel is Dismissed**


   **a. Petitioner Has Failed to Exhaust State Remedies**

Petitioner, in seeking to set aside a state court conviction, must exhaust all state judicial remedies before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A); Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Georgison, 588 F.3d at 153. To satisfy this rule, petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. See Georgison, 588 F.3d at 153 (issue is "whether a habeas petitioner adequately exhausted state remedies by fairly presenting both the factual and legal premises for his federal claim to the appropriate state courts"); see also Daye v. Attorney General, 696 F.2d 186, 190-91 (2d Cir. 1982) (en banc).

The petitioner must also have employed the proper state-law procedural vehicle so that the state courts are afforded an opportunity to review his claims. Dean v. Smith, 753 F.2d 239, 241 (2d Cir. 1985) ("[T]he wrong procedural vehicle" means "the state courts never had a fair opportunity to pass on his claim."); Gilliam v. Artus, 653 F. Supp. 2d 315, 326 (W.D.N.Y. 2009); Neil v. Walsh, No. 07 Civ. 6685, 2009 U.S. Dist. LEXIS 11817, at *20 (S.D.N.Y. Feb. 17, 2009); Kevilly v. Connell, No. 09 Civ. 270, 2009 U.S. Dist. LEXIS 78478, at *7

6

(N.D.N.Y. Aug. 31, 2009); Camarano v. Irvin, 902 F. Supp. 358, 365 (S.D.N.Y. 1994), aff'd, 122 F.3d 1055 (2d Cir. 1995); Walker v. Dalsheim, 669 F. Supp. 68, 70 (S.D.N.Y. 1987).

     In New York, to litigate a claim of ineffective assistance of trial counsel generally requires a motion to vacate pursuant to Article 440 of the New York Criminal Procedure Law. Walker, 669 F. Supp. at 70; see also Camarano v. Irvin, 902 F. Supp. at 365. This rule reflects the fact that an appellate court normally cannot evaluate the substance of such a claim fairly until an evidentiary record of all the relevant facts has been made at the trial court level. Walker, 669 F. Supp. at 70; see also Caballero v. Keane, 42 F.3d 738, 740 (2d Cir. 1994); People v. Brown, 45 N.Y.2d 852, 853-54 (1978).

     When, as here, a claim involves matters outside the trial record, like accusations about counsel's choice of trial strategies, a defendant must raise the allegations in an appropriate post-judgment motion. See, e.g., Davis v. Greene, No. 04 Civ. 6132, 2008 U.S. Dist. LEXIS 4968, at *27 (S.D.N.Y. Jan. 22, 2008) (attacks on trial counsel that rely on facts outside the record cannot be raised on direct appeal); Ramsey v. Bennett, No. 02 Civ. 5290, 2007 U.S. Dist. LEXIS 45483, at *9-10 (E.D.N.Y. Jun. 21, 2007) (Consideration of evidence from trial

counsel via Article 440 motion could shed light on why he made the strategic choices he did).  The Appellate Division expressly found that Perez's argument was "unreviewable on direct appeal" because it involved "matters outside the record concerning counsel's strategic choices."  Perez, 47 A.D.3d at 410.

Petitioner's failure to exhaust state court remedies presents this Court with two possible options: (1) the Court may require Perez to exhaust his state remedies as to this claim, or (2) it may deny the claim on the merits, despite his failure to exhaust.  28 U.S.C. § 2254(b)(2); see Pratt v. Grenier, 306 F.3d 1190, 1196-97 (2d Cir. 2003).

As a general matter, when a defendant has raised both exhausted and unexhausted claims, a stay and abeyance of habeas proceedings is appropriate only when there was good cause for the petitioner's failure to exhaust his claims first in state court and when the unexhausted claims are not "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Sims v. Ercole, No. 09 Civ. 4398, 2010 U.S. Dist. LEXIS 9520, at *1-2 (S.D.N.Y. Feb. 3, 2010); Kevilly, 2009 U.S. Dist. LEXIS 78478, at *8 n.3 (N.D.N.Y. 2009) (denial on the merits proper when all claims are "plainly meritless" or "patently frivolous"); Davis v. Greene, No. 04 Civ. 6132, 2008 U.S. Dist. LEXIS 4968, at *13-

14, *27-28 (S.D.N.Y. Jan. 22, 2008) (denying unexhausted claims found to be "plainly without merit" and "patently frivolous").

Under state law, an Article 440.10 motion to vacate remains an option which could afford the People and the state courts some opportunity to amplify the record to explain counsel's choices. Williams v. Senkowski, No. 97 Civ. 3887, 1999 U.S. Dist. LEXIS 17373, at *7 (S.D.N.Y. 1999) (arguing ineffective assistance claim on direct appeal does not bar prisoner from raising the claim again in a proper post-judgment motion). However, Petitioner's claims are without merit, as set forth below.

### b. Perez's Claim of Ineffective Assistance of Counsel Fails on the Merits

A defendant alleging that he received ineffective assistance of counsel has the burden to show that his lawyer performed deficiently – that his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687-88 (1984); see also Wong v. Belmontes, 130 S. Ct. 383, 384 (2009); Mirzayance, 129 S. Ct. at 1420; Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005). In addition, he must show that he suffered prejudice as a result of his attorney's allegedly

9

deficient performance.  Porter v. McCollum, 130 S. Ct. 447, 452

(2009); Lockhart v. Fretwell, 506 U.S. 364, 369 (1993);

Strickland v. Washington, 466 U.S. at 687; Henry v. Poole, 409

F.3d at 63.  Specifically, he must show a "reasonable

probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  Wong v.

Belmones, 130 S. Ct. at 386 (quoting Strickland, 466 U.S. at

694); Mirzayance, 129 S. Ct. at 1422.


        At all points, "[j]udicial scrutiny of counsel's

performance must be highly deferential," and "a court must

indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance."

Mirzayance, 129 S. Ct. at 1420 (quoting Strickland, 466 U.S. at

689); see also Wong, 130 S. Ct. at 385.  Moreover, "strategic

choices made after thorough investigation of law and facts

relevant to plausible options are virtually unchallengeable."

Strickland, 466 U.S. at 690; see also Mirzayance, 129 S. Ct. at

1420.


### 1.  Petitioner Has Failed to Establish Ineffective Assistance with Regard to an Insanity Defense

        From the start, defense counsel in this case had a

difficult task.  According to the underlying facts, Perez had

been discovered in Pollard's apartment with cord used to
strangle Pollard, the tools used to cut up the body, and the
victim's head stuffed under the kitchen sink.  Similarly, Perez
had earlier been found living in Drakeford's apartment after her
murder.  While he initially told police that two drug-dealers
killed Drakeford and that he had only helped disposed of her
body, he admitted that his tale was a lie and confessed that he
had killed both Pollard and Drakeford in later videotaped
interviews.

In the face of this evidence, defense counsel appears
to have done what he could to mount a defense, first and
foremost by moving to suppress Perez's damaging confessions.
Perez, however, disavowed his confessions and the statement he
had made to the doctors at Bellevue in favor of a new claim that
he was totally innocent and had not committed either murder.  By
the time of cross-examination, Perez had switched tacks again,
retreating to an insanity defense in the form of the claim that
it was "the beast" inside him that committed these crimes.

Counsel explored the possibility of an insanity
defense thoroughly.  He had five doctors examine Perez, but all
of them concluded that Perez was not criminally insane.  Counsel
did manage to find one doctor who was willing to testify that

11

Perez had acted as a result of an extreme emotional disturbance in committing the murders, evidence defense counsel presented to the jury in the hope of obtaining a lesser manslaughter conviction as to each charge.  In addition, he requested and received instructions on the defense, as well as a charge-down to manslaughter for both the Drakeford and the Pollard counts.

Counsel also sought to persuade the jury that the proof that Perez killed Drakeford was insufficient.  First, he undermined the evidence that Drakeford had been killed on the date alleged in the indictment (January 3, 2001).  Then, he presented a defense witness who testified that Drakeford was actually alive and well 10 days after that date.  He also elicited evidence that no one could establish when Drakeford went missing, that her body was not found until May, and that the Medical Examiner could not pinpoint the time of death.  In summation, he argued that the People had failed to prove their allegation about the time of death and asserted that this failure raised a reasonable doubt.

Counsel also sought to undermine confidence in the Drakeford investigation and to suggest that Perez's first statement about the drug-dealing murderers might be true.  For example, he pointed out that detectives had twice interviewed

12

McGill and knew when she had last seen Drakeford.  He noted that
the police never measured or photographed the guardrail on the
207th Street Bridge and did not bother to find out whether one
man alone could have thrown the body from the bridge or whether
it would have taken two people, as Perez had initially said.  He
presented Officer Jay, who once again described the shoe-lace
incident, highlighted the fact that Detective Organ did not have
his original notes, and underscored inconsistencies between
Perez's statements and the medical evidence.

On appeal, Perez argued that his attorney should have
argued the defense of extreme emotional disturbance as to both
charges and dropped the alternative theory as to the Drakeford
charges.  Under state law, however, the decision whether to
pursue an EED defense "falls to the defendant," not to counsel,
and there is no reason to suppose that it was not Perez who made
the choice in this case.  People v. Petrovich, 87 N.Y.2d 961,
963 (1996).  Perez had testified at the hearing he did not kill
Drakeford.

It is not unusual, or ineffective, for a lawyer to
present the jury with more than one alternative.  In Brito v.
Phillips, No. 05 Civ. 8972, 2006 Dist. LEXIS 74316, at *10
(S.D.N.Y. 2006) cited in the Appellate Division decision, an

13

attorney who had pursued a defense of misidentification through the trial, decided "to put forward an alternative theory of defense [of justification] at the last minute," seeking a charge and addressing the matter of self-defense briefly in summation. Both the state and federal courts rejected Brito's later claim of ineffective assistance because this course, while "debatable," did not fall outside the wide range of professionally competent assistance. Id. at *10 (citing Strickland, 466 U.S. at 690).

Contrary to Perez's view, there is nothing wrong with "putting the State to its burden to prove the identity of the perpetrator beyond a reasonable doubt" while also raising claims about a defendant's mental state. Card v. Arave, No. 93 Civ. 30, 2006 U.S. Dist. LEXIS 45166, at *8-9 (D. Id. June 29, 2006) (counsel, at his client's urging, argued "factual innocence" and "lack of intent due to mental illness"). No basis has been established for a finding that this choice of defense deprived Perez of his right to effective assistance of counsel.

### 2. Petitioner Has Failed to Establish Ineffective Assistance of His Trial Counsel at Sentencing

Perez also criticized his lawyer's performance at sentencing, claiming that he "conducted virtually no advocacy."

14

In the context of a sentencing claim like this one, Perez is required to establish: (1) reasonable probability that a competent attorney, aware of the available evidence, would have introduced it at sentencing, and (2) a reasonable probability that the sentencing judge, confronted with this evidence, would have imposed a different sentence. Wong, 130 S.Ct. at 386; Wiggins v. Smith, 539 U.S. 510, 535-36 (2003).

Perez had instructed his lawyer to ask for a sentence that allowed for parole but otherwise to keep silent, and his attorney carried out that request. On appeal, Perez asserted that his attorney should have ignored Perez's instructions and made arguments Perez did not want made about Perez's childhood and family life.

Perez did not claim that his attorney failed to investigate these areas of possible mitigation. Contast Porter v. McCollum, 130 S.Ct. 447, 453-54 (2009) (counsel failed to investigate, uncover and present evidence about his client's mental illness, his family background, or his heroic military service). Perez's claim is solely that the attorney should have repeated, at sentencing, information he had already gathered and presented to the judge at the suppression hearing and the jury at trial.

The Appellate Division's rejection of this argument was not contrary to or an unreasonable application of Supreme Court precedent.  In fact, the closest Supreme Court precedent appears to be Schriro v. Landrigan, 550 U.S. 465 (2007), in which the Court rejected a state prisoner's claim of ineffective assistance of counsel at sentencing.  There, as here, the prisoner had instructed his attorney not to bring mitigating circumstances to the court's attention at sentencing.  Id. at 469, 476.  In Schriro, the prisoner also later changed his mind, but he (unlike Perez) faulted his attorney for failing to do more investigation on the topic of mitigation.  Id. at 471.  Even so, the Court in Schriro found that the prisoner could not establish prejudice because the record supported a finding that he would have interrupted and refused to allow his counsel to present any mitigating evidence the attorney had uncovered.  Id. at 477.  Specifically, the Court held that "[i]t was not objectively unreasonable for that [state] court to conclude that defendant [established] Strickland prejudice," even on the basis of a failure to investigate possible mitigation prior to sentencing.  Id. at 478.

Furthermore, the Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of

16

its merit, viability, or realistic chance for success."
Mirzayance, 129 S.Ct. at 1420.  On the contrary, an attorney
need not adopt a strategy simply "because there [is] nothing to
lose by pursuing it," and may even advise a client to drop a
claim that stands "almost no chance of success."  Id. at 1419-
20.  Perez's counsel was justified in concluding that, since
Justice Torres had already heard the evidence about Perez's
childhood and psychiatric history earlier in the proceedings,
keeping silent on this score in accordance with Perez's wishes
was the wisest course.


        Putting the reasonableness of his attorney's choice
aside, Perez has not shown that repeating mitigating information
about his family and childhood would have influenced the outcome
of his sentencing.  The Sixth Amendment does not "require
defense counsel to present mitigating evidence at sentencing in
every case."  Wiggins, 539 U.S. at 533; Wong, 130 S.Ct. at 388
(noting that the presentation of "[a]dditional evidence" on
points already made may be an "insignificant benefit, if any at
all").  Here, since Justice Torres was already familiar with all
the evidence counsel could have repeated, counsel's failure to
repeat it caused no prejudice.  See Smith v. Spisak, 130 S.Ct.
676, 685, 688 (2010) (while lawyer's sentencing summation could
be viewed as inadequate, the Court found that it would not have

                              17

made a significant difference if counsel had repeated things the
jury had already heard).

Perez does not suggest that his attorney failed to
uncover evidence that might be construed as mitigating, and,
given Perez's desire not to have mitigating evidence about his
family and childhood presented at sentencing, it is unlikely
that he was prejudiced by his counsel's adherence to his wishes,
as in Schriro, 550 U.S. at 477-78.  Furthermore, there is no
adequate allegation that Perez's counsel failed to discuss all
the alternative sentencing approaches available with Perez.

### 3.  Petitioner Has Failed to Establish His Trial Counsel's Ineffectiveness with Regard to His Testimony

In his appellate argument, Perez noted that his
counsel could have placed [the defendant] on the stand to
testify that his confession to killing Drakeford was not
truthful and was made only because he was suicidally depressed
and willing to tell the police whatever they wanted to hear.
Perez has not submitted an affidavit about what testimony he
would have given, nor about his discussions with counsel
regarding whether he should testify.  Perez has not asserted
that he wanted to testify.  Counsel's strategy on this point may
reflect the fact that his client did not wish to testify, just

18

as he later refused to participate in the sentencing
proceedings.

Alternatively, Perez's attorney may have considered
Perez's performance while testifying at the suppression hearing
and decided that cross-examination at trial was likely to be
harmful to Perez's case.  Given that Perez appears to have
changed his story more than once, Perez may have intimated that
he was planning to commit perjury of some sort, in which case it
would have been a wise choice to persuade him not to testify.
Cf. Nix v. Whiteside, 475 U.S. 157, 169 (1986) ("It is
universally agreed that at a minimum the attorney's first duty
when confronted with a proposal for perjurious testimony is to
attempt to dissuade the client from the unlawful course of
conduct").

As the New York Court of Appeals has observed in a
slightly different context, one fundamental "premise of our jury
system is that jurors can detect false testimony." People v.
Ortiz, 76 N.Y.2d 653, 658 (1990).  Our courts are justifiably
unwilling to conclude that a defendant will benefit from
perjured testimony.  Id.; see also Nix, 475 U.S. at 186
(Blackmun, J. concurring) ("To the extent that [petitioner's]
claim rests on the assertion that he would have been acquitted

19

had he been able to testify falsely, [he] claims a right the law simply does not recognize").

While the actual motivation behind defense counsel's decision remains unclear based on the record before the Court, Petitioner has failed to establish that his counsel acted unreasonably when he did not put him on the stand at trial.

### 4. Perez's Trial Counsel Was Not Ineffective for His Conduct During Voir Dire

In a footnote, Perez criticized his lawyer's performance during voir dire, saying his questioning was minimal. The relative brevity of his questioning, however, may be best explained by the court's use of a comprehensive juror questionnaire. Thus, by the time defense counsel rose to speak, he already had a great deal of information about the jurors from the questionnaires and from the People's questioning. Perez has not suggested what additional questions his counsel could have asked or how they would have helped the defense. Moreover, there are a number of strategic reasons the attorney might not have wanted to preview too much of his case during jury selection.

20

Under those circumstances, a competent attorney could justifiably conclude that a "minimalist" approach during jury selection was least likely to damage the defense in the long run.  See Simon v. Epps, 344 Fed. Appx. 69, 83-84 (5th Cir. 2009) (finding counsel's relatively minimal voir dire questioning justified by the fact that similar questions had already been asked and answered by jurors).  No authority to the contrary has been cited.

### 5.  Perez's Trial Counsel Was Not Ineffective for Failure to Request a Particular Jury Instruction

Perez has also complained that his trial counsel had not asked the judge for an instruction that the jurors must consider the evidence of each charge separately.  Once again, however, this decision was a matter of strategy.  Perez's attorney likely understood that, in this case, the jurors were entitled to consider the proof of one murder when evaluating Perez's guilt of the other, which was one reason the charges were being jointly tried.  Accordingly, a defense request for an anti-commingling charge may have resulted in an instruction that would have underscored the various theories on which the proof of one homicide was relevant to the jury's determination of Perez's claims as to the other.  Defense counsel's decision not

21

to start that process in motion by seeking an anti-commingling
charge was a strategic choice.

### 6. Perez's Counsel Was Not Ineffective for His Failure to Offer Certain Testimony at the Confession Suppression Hearing

Perez has also faulted his lawyer for not making a
detailed offer of proof about what four potential medical
witnesses might have said on the defense case at the suppression
hearing.  Perez admits his lawyer did not proffer the witnesses'
planned testimony with any specificity and then labels this
tactic a failure to develop a full record for appeal.  However,
Perez has not proffered the witnesses' planned testimony with
any specificity, nor produced anything to establish that any of
these witnesses had anything to say that would have been helpful
to the defense.

Perez has failed to exhaust his state remedies as to
his claim of ineffectiveness and raised the claim only in the
context of an inappropriate procedural vehicle in which the
People did not have an opportunity to make a full evidentiary
record and Perez's counsel had no chance to defend himself from
his client's after-the-fact accusations.  Moreover, each
decision Perez has challenged was a matter of strategy, and each

course his trial counsel chose fell within the broad range of
strategies competent counsel might choose in a case of this
kind.  Perez has not established that he was denied effective
assistance of counsel.

## Petitioner's Claims Regarding the Trial Court's Decisions are Denied

In evaluating a trial court's decisions, federal
habeas relief is available only if the state court's decision
was "contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme
Court of the United States."  28 U.S.C. § 2254(d)(1); Knowles v.
Mirzayance, 129 S.Ct. 1411, 1414 (2009); Hawkins v. Costello,
460 F.3d 238, 242 (2d Cir. 2006).

A state court decision is "contrary to" federal law
only "if the state court applied a rule that contradicts the
governing law set forth" in Supreme Court precedent or "if the
state court confronts a set of facts that are materially
indistinguishable from a decision of [the Supreme Court] and
nevertheless arrives" at a different result.  Williams v.
Taylor, 529 U.S. 362, 405-06 (2000); see also Georgison v.
Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Hawkins, 460 F.3d
at 242; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003).

Habeas relief is available under the unreasonable application clause only if a state court identifies "the correct governing legal principle from [the Supreme Court's] decisions," but unreasonably applies it to the facts. Williams, 529 U.S. at 411-13; see also Parsad, 337 F.3d at 181.

### a. Perez's Claim Based on Denial of a Continuance is Dismissed

Perez has claimed that the court at the suppression hearing limited cross-examination of a prosecution witness when it ruled that a single question posed to a detective should not be answered, and that the judge precluded him from offering relevant evidence when, at the end of the hearing, the court refused to grant an adjournment to allow defense counsel to call four witnesses who had "interacted" with Perez after he left the precinct. Perez has also asserted that the judge was predisposed against the defense argument for suppression — a bias supposedly revealed by a single comment during an early colloquy. Moreover, Perez has contended that the judge's rulings at the hearing improperly impeded his federal constitutional due process right to present evidence.

Perez's due process claim is not properly before this Court, for, as the Appellate Division found, Perez "did not

24

preserve his claim that he was constitutionally entitled to introduce additional evidence at the suppression hearing." Perez, 47 A.D.3d at 410 (citations omitted).  As a result of this procedural default, the state court expressly declined to review Perez's belated constitutional claim.  Id.  Perez is therefore barred on an independent state law ground from asking this Court to review the merits in the absence of any showing that there was good cause for his default and prejudice flowing from it or proof that there has been a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 729-731, 749-750 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 495 (1986)).

Moreover, as the Appellate Division found, the court permitted Perez to introduce extensive evidence of his alleged mental illness to support his claim that his confessions were involuntary.  People v. Perez, 47 A.D.3d at 410.  Later, the court denied the defense a continuance for the purpose of introducing additional evidence on this issue, "since the proposed evidence was cumulative or irrelevant."  Id.

The facts underlying Perez's due process claim follow. The suppression hearing began on September 24, 2002 with the testimony of Detective Michael Davis who described Perez's arrest and questioning at the precinct by the police and

25

prosecutor.  During his cross-examination of this witness,
defense counsel at one point asked Davis about a "medical sheet"
prepared by another officer a couple of hours after Perez made
his statements to Davis.

When defense counsel asked the officer to search
through his file for the document, the judge raised the question
of its relevance, pointing out that "[a] guy can't say later on
he's suicidal and what not" and expect that claim to undermine
an earlier waiver of his Miranda rights.  Nonetheless, the judge
allowed the defense to obtain the document from the officer, to
read through it, and to question the detective about what he had
heard from another officer about Perez's attempted suicide.

The People's second witness, retired Detective John
Organ, appeared two weeks later on October 9, 2002 to describe
his early interaction with Perez about the Drakeford murder and
Perez's subsequent confession that he was guilty of that crime.
In the last few pages of his cross-examination, defense counsel
asked Organ about Perez's "suicide" attempt and the detective
said he had known nothing about it when he questioned Perez.
Next, defense counsel asked, "Were you made aware of any
physical problems that Mr. Perez might have had when you read

26

him [his] Miranda rights of when you questioned him," and Organ replied, "No".

When defense counsel went on to ask "were you aware of any mental state or frame of mind out of the ordinary that Mr. …," the judge stepped into say, "Sustained.  Don't answer that." Counsel then posed a few more questions about the Miranda warnings given before Perez's second written statement and about the length of time it took to prepare that statement.

On October 15, 2002, after defense witness Officer Brian Jay had described the pre-statement incident in the holding cell, when Perez tied his shoelaces together and hung himself from the bars for five seconds, and after lengthy medical records of Perez's post-arrest stay at Bellevue had been admitted into evidence, defense counsel said that, in addition to his client, there were "four witnesses I'd like to call . . . [including] two EMS individuals who transported my client from the precinct to the hospital."  When the judge asked why the defense would "need two of them to say that," counsel said that these two individuals had also "cut him down [and] assisted in the removal from the cell to the hospital."

27

Counsel stated that he wanted to call Doctor Antonio LaBott, a psychiatrist who treated Perez at Bellevue, and Doctor Elliott Aaron, whose reports were also included in the defense exhibit: "They, unfortunately, are not able to testify today," but "with some assistance from the [P]eople, if I can get one or both of these emergency medical individuals, we can arrange a date, [and] I will have medical testimony on that day, of course, with your indulgence, Your Honor".

The People pointed out that it was not the EMTs who "cut the defendant down," but Officer Jay, whose testimony the court had already heard.  The People also noted that the doctors' reports were all already in evidence.  The court also said that the testimony appeared "redundant and irrelevant at this juncture," explaining, "You got your records in.  That's all you need.  You can argue from that."  Counsel responded: "May I respectfully except to you Honor's ruling."  Perez then took the stand to testify on his own behalf.

At the conclusion of the evidence that day, the matter was adjourned to November 12, 2002, so that each side could submit a written memorandum of law.  At no point during that process did the defense come forward with a specific offer of proof about any of the four proffered witnesses.

28

Every criminal defendant has a right, grounded in the Due Process Clause and the Sixth Amendment, to "a meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)); Taylor v. Illinois, 484 U.S. 400, 408, n. 13 (1988); Rock v. Arkansas, 483 U.S. 44, 51-53 (1987); Chambers v. Mississippi, 410 U.S. 284, 302 (1973); Washington v. Texas, 388 U.S. 14, 19 (1967); Hawkins, 460 F.3d at 243.  That right, however, is not without limits and may bow to accommodate other legitimate interests. Rock, 483 U.S. at 55; Chambers, 410 U.S. at 295; Hawkins, 460 F.3d at 243 ("A defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability and the accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence") (internal quotations and citations omitted); Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir. 2006) ("As with many rights, the right to present a defense is not unlimited."); Buie v. Sullivan, 923 F.2d 10, 11 (2d Cir. 1990) ("The right to present a defense . . . [is] not unqualified").

The federal courts are traditionally reluctant to impose constitutional constraints on ordinary evidentiary

29

rulings by state judges. Rosario v. Attorney General, No. 00
Civ. 6681, 2001 U.S. Dist. LEXIS 2820, at *35 (S.D.N.Y. Mar. 19,
2001); see also Crane, 476 U.S. at 689-90. The Constitution
unquestionably permits a judge "to exclude evidence that is
'repetitive . . . [or] only marginally relevant' . . .." Crane,
476 U.S. at 689-90 (quoting Delaware v. Van Arsdall, 475 U.S.
673, 679 (1986)).


The rules governing requests for continuances reflect
the same principles. A defense motion for a continuance to
facilitate presentation of defense evidence remains entrusted to
the discretion of the trial court. McCray v. Bennet, No. 02
Civ. 839, 2004 U.S. Dist. LEXIS 28843, at *27 (S.D.N.Y. Mar. 9,
2004); see also Wilkerson v. Burge, No. 03 Civ. 3857, 2005 U.S.
Dist. LEXIS 14679, at *34 (S.D.N.Y. Jul. 19, 2005) (denial of
continuance may reflect the state's appropriate interest in
"proceeding to trial without unnecessary delay"); Cruz v.
Greiner, No. 98 Civ. 7939, 1999 U.S. Dist. LEXIS 17695, at *118
(S.D.N.Y. Nov. 16, 1999) (judge may exercise discretion "in
balancing the State's interest in the orderly administration of
its court system against the defendant's right to present a
defense").

30

To prevail on his claim, Perez must demonstrate that the court's denial of a continuance was arbitrary and that it substantially impaired his defense.  Wood v. Artuz, 39 F. Supp. 2d 211, 214 (E.D.N.Y. 1999) (citing United States v. Edwards, 101 F.3d 17, 18 (2d Cir. 1996) and United States v. King, 762 F.2d 232, 235 (2d Cir. 1985)); see also McCray, 2004 U.S. Dist. LEXIS 28843, at *27; Marino v. Miller, No. 97 Civ. 2001, 2002 U.S. Dist. LEXIS 16310, at *33 (E.D.N.Y. Aug. 22, 2002). Factors relevant to the determination include: (1) whether due diligence was exercised to obtain the witness; (2) whether substantial favorable evidence would have been offered by the witness; (3) whether the witness was available and willing to testify; and (4) whether the denial of the continuance materially prejudiced the defendant.  Wilkerson, 2005 U.S. Dist. LEXIS 14679, at *28 (S.D.N.Y. 2005); Wood, 39 F. Supp. 2d at 214.

Examination of the four relevant factors refutes Perez's claim that he was entitled to a continuance.  First, Perez has not established that the defense acted with due diligence to obtain the witnesses.  No explanation was given why the witnesses could not appear on the date scheduled for the continuation of the hearing, which was in fact a date picked at counsel's request.  The defense did not explain what efforts had

31

been made in the previous weeks since the hearing started to
speak to these witnesses and work out a reasonable schedule for
their appearance.  At the time he sought the continuance defense
counsel did not indicate when any of these witnesses would be
available, nor suggest that he had subpoenaed any of these
witnesses.

The judge would have been justified in denying the
request on the basis of this lack of due diligence alone.  Wood,
39 F. Supp. 2d at 215 (court found that "no serious effort was
ever made to obtain [the witness's] testimony," when defense
sought a 2-week adjournment after making only a single last-
minute call to the witness); Cruz, 1999 U.S. Dist. LEXIS 17695,
at *114 (judge properly denied request for a 2-week adjournment
when counsel had made no effort to subpoena the witness prior to
the trial).

As to the second factor, whether the witness was
available and willing to testify, defense counsel failed to
contact the witnesses and determine whether and when they might
be available.

The third factor is whether substantial favorable
evidence would have been offered by the witness.  Perez has not

produced a statement, sworn or unsworn, establishing what testimony the four witnesses would have given. See Wilkerson, 2005 U.S. Dist. LEXIS 14679, at *30-31. Thus, he has not established that they would have provided "substantial favorable evidence" had they appeared. See Wood, 39 F. Supp. 2d at 215 (petitioner cannot establish that testimony would be favorable when it appears that his counsel never spoke to the witness).

As to the EMS personnel, the defense never articulated any offer of proof showing that either of these witnesses could have provided relevant, non-cumulative testimony. What counsel did say about the EMT witnesses undermined his position, for his offer included the allegation that these EMTs had supposedly helped cut Perez down. In fact, as the prosecutor pointed out and as the defense testimony from Officer Jay stated, the EMTs who took defendant to Bellevue late in the day were not present during the shoelace incident at five o'clock that morning. Moreover, these EMTs did not take defendant to Bellevue until 7:30 p.m. - some 14 hours after he first waived his Miranda rights with Detective Davis at 5:30 a.m.. In his testimony, Perez did not mention any interactions he may have had with the EMS personnel that would have justified an adjournment to await their testimony.

33

The showing as to the two Bellevue doctors was also inadequate.  First, the hundreds of pages of records these doctors had prepared were already in evidence for the court to consider.  Although defense counsel stated that he thought their testimony might add something, he never specified what it might be.  Although Perez was placed on suicide watch due to his stated intent to kill himself, the records indicate that the doctors soon found his talk of suicide unpersuasive.

During his interview with Dr. Elliot, Perez's movements and speech were normal; his thought processes were "logical, coherent, and goal directed;" he was oriented and alert, his memory and concentration were fine; his affect was "very relaxed;" and he conveyed "more interest, fascination, or possibly even pride than concern" when he told the doctor how he had committed the murders.  (Bellevue Records at 25.)  Dr. Elliot concluded that Perez had an "antisocial character structure with a long-standing pattern of committing and even enjoying violent, sadistic acts."  (Bellevue Records at 26.) There is no basis to assume that Dr. Elliott's testimony would have been favorable to the defense.

The same is true of Dr. Antonio Abad, who filed a report when Perez was discharged from Bellevue six days after

34

his arrival.  Dr. Abad noted that Perez had been cooperative
with interviews, had displayed no agitation or inhibition, and
had been "logical and coherent with no evidence of delusions."
(Bellevue Records at 4.)  During this period, Perez had
"consistently denied suicide ideation" and expressed "multiple
future oriented ideas," engaged positively in one-on-one
psychotherapy, and related appropriately with his peers and the
staff.  (Bellevue Records at 4-5.)

Given that defense counsel did not make an offer of
proof about what these witnesses could say that would have added
anything to the evidence the court had already received, Justice
Torres appropriately concluded that there was no reason to grant
a continuance to await their unscheduled arrival.

The fourth factor to consider is whether the denial of
the continuance materially prejudiced the defendant.  "To a
great extent the issue of material prejudice to defendant
overlaps in this case with the issue of whether the witness
would have offered substantial favorable evidence." Wilkerson,
2005 U.S. Dist. LEXIS 14679, at *31-32.  Perez has not
established that any of the four witnesses had favorable
testimony to offer.

35

The court's denial of defense counsel's request for a
continuance until some unspecified time so that the defense
could call four additional witness was proper given that the
court had already received detailed information about Perez's
condition.  Moreover, the judge had viewed Perez's condition for
himself on the lengthy videotapes that had been made of Perez's
three interviews with the prosecutor.  On the defense case, the
judge had heard Perez's own testimony that he was too distraught
and suicidal to understand what he was doing when he waived his
rights, as well as evidence from Officer Jay about the shoe-lace
incident in the holding cell, and received the documentation
from Bellevue.

Having allowed sufficient evidence on Perez's state of
mind at the time he waived his rights (including his own
testimony, the testimony of one other defense witness, and 100
pages of records), the court properly exercised its discretion
not to grant another adjournment of an unspecified length to
await four other defense witnesses.  Under these circumstances,
the denial of the continuance did not substantially impair the
right to present a defense.

As to Perez's related allegations, Perez has not
established that the judge's ruling on a single question the

36

defense posed to Detective Organ regarding his awareness of Perez's mental state improperly interfered with Perez's constitutional right to present evidence, for the question was not in proper form.  Sustaining an objection in this instance did not preclude defense counsel from cross examining the prosecution witness or signal that the court would not allow the defense to fully explore Mr. Perez's mental state.

Perez's contends that the court expressed overt bias against Perez and his arguments when the judge stated that "[a] guy can't say later on he's suicidal and what not" and expect that claim to undermine an earlier waiver of his Miranda rights. A judge does not reveal a bias when he questions an attorney about the legal basis for a line of questioning.  Here, the judge asked about the relevance of a document, which appeared to concern defendant's mental state only after the relevant period. Ultimately, the court permitted Perez to present extensive testimony and evidence about his suicide attempt and his state of mind before and after he confessed, including the very document at issue during the colloquy.

### b.  Petitioner's Claim Based on the Denial of the Severance Motion is Dismissed

37

Renewing another claim raised on direct appeal, Perez contends that the decision not to sever the charges concerning the Drakeford murder from the charges related to Pollard's murder prejudiced him.

Under state law, as the Appellate Division found, Perez had not established "good cause for a discretionary severance," and the charges were properly tried together "on the basis of overlapping evidence . . . especially with regard to [Perez's] confessions and their surrounding circumstances." Perez, 47 A.D.3d at 410-11; see NYCPL §§ 200.20(2)(b), (c). Perez seeks to relitigate this issue, ostensibly on the theory that the joint trial constituted a violation of his right to due process.

Joinder of offenses "only rises to the level of a constitutional violation only if it 'actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process.'" Herrig v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993) (quoting Tribbitt v. Wainwright, 540 F.2d 840, 841 (5th Cir.1976), cert. denied, 430 U.S. 910 (1977)); see also Harris v. Burge, No. 04 Civ. 5066, 2008 U.S. Dist. LEXIS 22981, at *22 (S.D.N.Y. Mar. 25, 2008); Oliveira v. Phillips, No. 05 Civ. 564, 2007 U.S. Dist. LEXIS 74118, at *19-20 (S.D.N.Y. Sept.

28, 2007); Burrows v. Herbert, 2009 U.S. Dist. LEXIS 45722, at
*13 (W.D.N.Y. Jun. 1, 2009); McKinnon v. Conway, No. 02 Civ.
6314, 2008 U.S. Dist. LEXIS 35857, at *9 (N.D.N.Y. 2008); United
States v. Perez, 940 F. Supp. 540, 546 (S.D.N.Y. 1996) (under
federal rules, defendant must show that a joint trial will so
severely prejudice him that he will be denied a fair trial)
(quoting United States v. Burke, 700 F.2d 70, 83 (2d Cir.),
cert. denied, 464 U.S. 816 (1983)).


        Accordingly, Perez bears a high burden in seeking
habeas relief on this ground.  Herring v. Meachum, 11 F.3d at
378 (observing that it is appropriate for a state prisoner
raising this type of claim to bear "an onerous burden");
Burrows, 2009 U.S. Dist. LEXIS 45722, at *14-15 (same);
Oliveira, 2007 U.S. Dist. LEXIS 74118, at *19-20 (petitioner
must bear a "high burden").  Joinder is "a constitutionally
acceptable accommodation of the defendant's right to a fair
trial," since it will "conserve state funds, diminish
inconvenience to witnesses and public authorities, and avoid
delays in bringing those accused of crime to trial."  Herring v.
Meachum, 11 F.3d at 377 (quoting Bruton v. United States, 391
U.S. 123, 134 (1968)); Cassidy v. Poole, No. 06 Civ. 6310, 2009
U.S. Dist. LEXIS 117712, at *14 (W.D.N.Y. Dec. 17, 2009);
Oliveira, 2007 U.S. Dist. LEXIS 74118, at *20-21.  Thus, in

evaluating whether the trial was actually rendered unfair, the emphasis must be on the word "actually;" a prisoner must go beyond the "potential" for prejudice to "prove that actual prejudice resulted from events as they unfolded at the joint trial." Herring v. Meachum, 11 F.3d at 377-78; Cassidy v. Poole, 2009 U.S. Dist. LEXIS 117712, at *14; McKinnon v. Conway, 2008 U.S. Dist. LEXIS 35857, at *9.

Perez's severance argument is based primarily on two points: (1) his claim that there was substantially more proof of his identity as Pollard's killer than his identity as Drakeford's killer, and (2) his assertion that he had "important testimony" to give as to the Drakeford charges, but a strong need to refrain from testifying about the Pollard counts. However, given the nature of the defense he raised as to each set of charges, he suffered no actual prejudice because each jury would have heard about both murders even if he had been granted separate trials.

The circumstances in this case are similar to those in the Honorable Shira Scheindlin's recent decision denying a habeas application in Oliveira v. Phillips, 2007 U.S. Dist. LEXIS 74118. There, a prisoner convicted of two murders alleged that he was prejudiced by the fact that one jury heard and

40

determined both sets of charges at a joint trial. Id. at *21. There, too, the prisoner alleged that he had important testimony to give concerning one murder and a strong need to refrain from testifying on the other. Id. at *21-24. Specifically, Oliveira alleged that he wanted to provide an innocent explanation for his possession of one murder victim's credit cards and for the proof that he had been present in that victim's apartment. Id. at *22-23.

As Judge Scheindlin observed, the crucial fact in this context was that "petitioner's innocent explanation for the possession of [one victim's] credit cards" would have opened the door to cross-examination about the other murder case, "even if such evidence had been excluded from the prosecutor's case-in-chief on the [first murder]." Id. at *23-25; see also United States v. Werner, 620 F.2d 922, n. 7, 930 (2d Cir. 1980) (claim of joinder prejudice failed where evidence at one trial would have been admitted at second trial whether the defendant testified or not). Because "the jury would have heard about both murders, even if the charges had been severed," Oliveira "did not suffer substantial prejudice" and was not entitled to habeas relief. Oliveira v. Phillips, 2007 U.S. Dist. LEXIS 74118, at *25-26.

Here, too, there was no actual prejudice because even at separate trials each jury would have heard about both murders.

As to the Pollard case, Perez appears to concede that he would not have testified about the Pollard killing even if he had been granted a separate trial on those charges. See Oliveira v. Phillips, 2007 U.S. Dist. LEXIS 74118 at *26-27 (since petitioner conceded he would not have testified about one homicide, even if it had been tried separately, his ability to present a defense to that charge was not adversely affected by the joint trial). Instead, presumably, Perez's defense would have been precisely the same as it was at the joint trial: the assertion that he murdered Pollard under the influence of extreme emotional disturbance. Any jury evaluating Perez's claim of diminished culpability for the Pollard murder would necessarily have heard about the Drakeford killing as each side's psychiatric witnesses explained their findings. Even at a separate trial of the Pollard charges, the jury would have learned about the other murder and Perez's repeated confessions to having committed it.

Perez has contended that he would have taken the stand at a separate trial for the Drakeford killing and that his

42

testimony might have led to a different result.  He proposed:
(1) to tell the jury that he had Drakeford's permission to live
in her apartment, (2) to testify that she had been killed by two
drug dealers to whom she owed money, and (3) to explain that the
police had coerced him into making a false confession that he
had killed Drakeford.

Perez had already told that story of Drakeford's
murder to the Bronx authorities and his statements in that
regard were part of the People's case against him – along with
his own subsequent acknowledgement that they were not true.
Thus, even at a joint trial, defendant was able to posit the
theory that two drug dealers were the real killers without
subjecting himself to the rigors of cross-examination.

Equally important, as in Oliveira, Perez's proposed
testimony would have exposed him to cross-examination about
Perez's unauthorized presence in Pollard's apartment in order to
rebut his claim that his presence in Drakeford's was innocent.
Oliveira v. Phillips, 2007 U.S. Dist. LEXIS 74118, at *23-25
("innocent" explanation for possession of one victim's property
would open door to cross about similar possession of the other
victim's property); see also United State v. Zackson, 12 F.3d
1178, 1182 (2d Cir. 1993) (prior act evidence is generally

43

admissible when defendant claims his conduct has an innocent
explanation).

Furthermore, Perez's proposed testimony that his
Drakeford confessions were false and coerced would necessarily
have opened the door to evidence about the circumstances
surrounding that confession, including the fact that it was
preceded by his true confession to the Pollard killing.  Even at
a separate trial, the jury determining the Drakeford murder case
would have learned of the Pollard murder as well.  Consequently,
the state court decision on severance was neither contrary to,
nor an unreasonable application of, clearly established federal
law.

## c.  Petitioner's Claim Based on the Admission of the Castro
    Report is Denied

At trial, the jury learned directly from the police
that they apprehended Perez in Pollard's apartment with
Pollard's partially-dismembered body.  In addition, it learned
that the police had arrived at the apartment as a result of a
report from Fernando Castro, who said he had seen Perez in
Pollard's apartment with a headless body.  On appeal, Perez
claimed that the evidence about Castro's report was "highly
prejudicial" hearsay and that its admission violated state

hearsay rules and his constitutional rights to confrontation and due process.  Here, he has renewed his federal constitutional claims.

Preliminarily, as the state appellate court held, Perez's constitutional arguments were not preserved for appellate review under state law.  People v. Perez, 47 A.D.3d at 411.  The state court refused to entertain these arguments because of Perez's procedural default.  Id.; see Machicote v. Ercole, 2008 U.S. Dist. LEXIS 3612, at *44-48 (S.D.N.Y. 2008) (procedural default for failure to contemporaneously object presents independent and adequate state law grounds for denial, barring federal review except in limited circumstances).  This Court cannot reach the merits without a showing that there was good cause for his default and prejudice flowing from it, or that there has been a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. at 729-31, 750 (1991).  Perez does not meet either of these requirements.

As the People argued at trial, evidence of Castro's report to the police was admitted for an appropriate non-hearsay purpose: to explain why the police confronted Perez at Pollard's apartment in the middle of the night in the highly confrontational way they did.  Allowing evidence of Castro's

45

report was proper for this purpose under state law.  See People
v. Tosca, 98 N.Y.2d 660, 661 (2002); People v. Johnson, 40
A.D.3d 1011, 1012 (2nd Dep't. 2007); People v. Guerrero, 22
A.D.3d 266, 266 (2005); see also People v. Rivera, 96 N.Y.2d
749, 751 (2001).

     For the same reason, admission of the report did not
violate the federal constitution.  The Confrontation Clause does
not bar use of testimonial statements when they are admitted for
purposes other than establishing the truth of the matter
asserted.  See Crawford v. Washington, 541 U.S. 36, 59 n.9
(2004); United States v. Matera, 489 F.3d 115, 122 (2d Cir.
2007); United States v. Dupre, 462 F.3d 131, 137 (2d Cir. 2006);
United States v. Paulino, 445 F.3d 211, 216-17 (2d Cir. 2006);
Valerio v. Division of Parole, No. 07 Civ. 9867, 2008 U.S. Dist.
LEXIS 47132, at *4 (S.D.N.Y. Jun. 16, 2008).

     Allowing Castro's report to explain police actions and
lay to rest any inference that they acted improperly constituted
a legitimate use of the report for a non-hearsay purpose.  See,
e.g., Valerio, 2008 U.S. Dist. LEXIS 47132, at *5 (statements
from crowd accusing defendant of having a gun and having
assaulted someone used to explain why officers confronted and
searched him and to refute claim they failed to investigate);

46

Russell v. Graham, No. 06 Civ. 5730, 2007 U.S. Dist. LEXIS
64049, at *16-18 (E.D.N.Y. Apr. 6, 2007) (statements implicating
defendant made during police canvass used to explain why
officers went to a particular apartment and sought consent to
search it); Rolland v. Greiner, No. 02 Civ. 8403, 2006 U.S.
Dist. LEXIS 17034, at *7-9 (S.D.N.Y. Mar. 27, 2006) (non-
testifying codefendant's statements inculpating defendant used
to explain why officers interviewed defendant five years after
the crime and to rebut claim of police conspiracy).

        Castro's report was that Perez and two men were in
Pollard's apartment along with a headless body.  While in some
cases this news might be shocking to a jury, here Perez had
admitted as much in his confession and direct non-hearsay
testimony from the officers also presented the same facts.
Moreover, the challenged evidence did not include any details
that might have led the jury to conclude that Perez displayed
the body to Castro in a callous fashion.  In light of these
surrounding facts, Perez has failed to show that the admission
of Castro's report prejudiced him.

        Perez also argued on direct appeal that the judge
should have delivered a limiting instruction.  Like his
constitutional arguments, this claim was unpreserved and cannot

47

serve as a basis for habeas relief.  Perez's counsel chose not
to seek an instruction.  The instruction would necessarily have
highlighted the fact that the police acted appropriately in
approaching the apartment and Perez and could also have
undermined the defense's attack on other aspects of the police
work, especially in connection with the Drakeford murder.

### d.  Perez's Claim Against the Sentence Imposed is Denied

For the murder of Doris Drakeford, Perez was convicted
of New York State's most serious crime: first-degree murder.  As
a result, he was sentenced, as a second violent felony offender,
to a lifetime term of imprisonment without the possibility of
parole.  See NY Penal Law § 125.27; NY Penal Law § 70.00(2); NY
Penal Law § 70.00(5).  At the same time, for killing and
dismembering Jerry Pollard, Perez was convicted of second-degree
murder and sentenced to 25 years to life in prison, again, as
authorized by New York law.  See NY Penal Law § 125.25; NY Penal
Law § 70.00(2)(a); NY Penal Law § 70.00(3)(a)(i).  The sentences
for the two killings were set to run consecutively, which was
also authorized by New York law.  See NY Penal Law § 70.25.

On appeal, Perez did not dispute the legality or
constitutionality of his sentences and acknowledged that his

48

sentences were "the maximum permitted by law."  Instead, he sought an interests-of-justice modification to reduce the term to one that permitted parole.  The Appellate Division rejected that appeal to their discretion.  Perez, 47 A.D.3d at 411. Perez has repeated the argument he made in the state appellate court in his Petition at Point V.

A discretion-based, excessive-sentence claim may not be raised as grounds for habeas corpus relief to challenge the length of a sentence within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Pinero v. Greiner, 519 F. Supp. 2d 360, 371 (S.D.N.Y. 2007); Diaz v. Herbert, 317 F. Supp. 2d 462, 479-80 (S.D.N.Y. 2004); Herrera v. Artuz, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001).  It is only in extraordinary circumstances that a sentence within the lawful range could run afoul of the Eighth Amendment.  Herrera v. Artuz, 171 F. Supp. 2d at 151 (quoting Salcedo v. Artuz, 107 F. Supp. 2d 405, 414 (S.D.N.Y. 2000)).  Such extreme circumstances would include cases in which the punishment is barbaric or vastly disproportionate to the crime committed.  See Taylor v. Poole, No. 06 Civ. 760, 2010 U.S. Dist. LEXIS 7687, at *27 (W.D.N.Y. Jan. 29, 2010) (quoting Solem v. Helm, 463 U.S. 277, 284 (1983)); Salcedo, 107 F. Supp. 2d at 414; Thomas v. Senkowski, 968 F. Supp. 953, 957 (S.D.N.Y. 1997).

49

Perez does not cite the Eighth Amendment or claim that his sentence is constitutionally disproportionate. Even if his pro se pleadings are construed liberally to present a federal constitutional claim, there are a number of procedural obstacles. First, Perez did not raise a constitutional objection at sentence, and New York's contemporaneous-objection rule would have barred review on appeal. People v. Hurley, 75 N.Y.2d 887, 888 (1990) (claim that defendant was "penalized" for going to trial not preserved due to lack of objection at sentencing); People v. Ruz, 70 N.Y.2d 942, 943 (1988) (claim that sentence constituted ex post facto punishment not preserved); People v. Ingram, 67 N.Y.2d 897, 899 (1986) (claim that sentence was "cruel and inhuman" punishment not preserved). Second, he did not argue on appeal that the sentence violated the constitution or constituted cruel and unusual punishment. That failure to present a federal constitutional argument to the state courts is a failure to exhaust his state remedies and a consequent procedural default.

The Eighth Amendment principle of gross disproportionality does forbid the imposition of extremely lengthy sentences for relatively trivial offenses. Solem, 463 U.S. at 296, 303 (life imprisonment without the possibility of

parole disproportionate to the crime of uttering a $100 "no account" check).  However, the sentence of life imprisonment without parole is not disproportionate to the crime of murder. See Solem, 463 U.S. at 290 n.15.

While Perez continues to assert that his crimes were the result of mental illness, he has failed to prove that to be the case and faces strong evidence in support of the contrary conclusion.

Given these facts, there was no federal constitutional impediment to the imposition of a term of life imprisonment without parole.

## Conclusion

Based on the conclusions set forth above, the petition for a writ of habeas corpus is denied.

New York, NY
March 8, 2011

ROBERT W. SWEET
U.S.D.J.